UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| YASMEEN SALAAM, | ) | CASE NO.  1:12 CV 2656 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| PTS OF AMERICA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

CHRISTOPHER A. BOYKO, J.:

   *Pro se* plaintiff Yasmeen Salaam filed the above-captioned *in forma pauperis* Complaint

pursuant to 42 U.S.C. §1983.  Plaintiff names PTS of America, LLC as the party Defendant, which

he describes as an Illinois corporation licensed to do business in Ohio.  He asserts the Defendant

violated his civil rights under color of state law.  In his prayer for relief, Plaintiff seeks a declaratory

judgment ordering the Defendant to "cease and desist" from all policies and practices that infringe

on his right to due process.

## Background

   One of Defendant's drivers arrived in a van at Cook County Jail in Chicago, Illinois on

August 8, 2012 to pick up and transport Plaintiff to Cleveland, Ohio.  The driver was tasked to bring

Plaintiff to Ohio to face criminal charges filed against him by the state.  Plaintiff joined seven other

prisoners who were being transported in the Defendant's van that day.[1]  Before Plaintiff stepped into the van he explained to the driver that he recently underwent surgery in his groin area and needed to avoid pressure or risk rupturing a vein.

Upon entering the van, Plaintiff immediately complained that the other prisoners had not bathed in five days.  He described the van interior as horrible smelling and cramped.  On the second day of the trip, the driver stopped for sandwiches and soft drinks but Plaintiff claims he had no appetite for food because the stench was so overwhelming.

Back on the road, Plaintiff complained that the driver operated the van at excessive speeds over every road bump and pot hole.  The tumultuous ride made it impossible for Plaintiff to sleep and he claims he had to wait 5- 6 hours before the driver stopped for a bathroom break.  When they eventually stopped for dinner that night Plaintiff alleges he could barely move his legs because he "had just had a heart attack and a pain tube put into [his] groin." (Compl. at 4-5.)  He does not state where he slept that night nor does he allege he was unable or denied an opportunity to regain the strength in his legs.

On the third day of the trip to Cleveland, the van driver allowed the other inmates to take a break to smoke cigarettes.  Plaintiff protested that smoking should not be permitted, but was told not to speak.  The other inmates were allowed to smoke in the van with the door partially open.  Plaintiff complained there was insufficient ventilation and that the smoke was making him cough and gasp for air.  The van driver disregarded his complaints, which allegedly caused Plaintiff physical and mental anguish.

---

[1]Plaintiff does not disclose whether the other prisoners were pretrial detainees or convicted of crimes.

Later in the day the van stopped at an Indiana jail to pick up another inmate.[2]  When the sheriff at the jail looked in the van he asked how "do you travel these men around like that.[?] [T]hat's horrible." (Compl. at 5.)  The driver drove away from the Indiana jail at such an excessive rate a state trooper allegedly flagged him down traveling at 75 mph in a 55 mph zone.  When the driver explained he worked for PTS and was transporting prisoners to jail, the trooper allegedly advised the driver he was not to act as a policeman and "could not travel like that."  *Id.*  The trooper issued a speeding ticket to the van driver, who immediately resumed the trip to Ohio.

During the entire period Plaintiff was transported from Illinois to Ohio he was allegedly not permitted to brush his teeth, use deodorant or "wash up."[3]  Although the Plaintiff twice mentions that the driver stopped for sandwiches and pop during their trip, he claimed the driver only stopped "once" for water between Chicago and Cleveland.  At one point the driver handed out "meds" with his bare hands, got mixed up and then "just gave them to us and told the prisoners to figure it out." (Compl. at 6.)  There is no allegation Plaintiff received incorrect medication.

Finally, Plaintiff describes the driver's treatment as "brutal" and maintains he was physically and mentally scarred by the Defendant's treatment.

## Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court is required to dismiss an action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be

---

[2]Plaintiff does not state whether another inmate was dropped off in Indiana to replace the inmate the driver picked up or whether nine inmates were traveling in the van.

[3]Since Plaintiff states he was permitted to use the bathroom, the Court presumes he means he was unable to bathe during the time he was traveling.

granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to section 1915(e).

<u>Civil Rights Violation</u>

To prevail in a civil rights action under 42 U.S.C. §1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the Constitution and law of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 alone creates no substantive rights; rather it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). The statute applies only if there is a deprivation of a constitutional right. *See e.g., Paul v. Davis*, 424 U.S. 693, 699-701(1976); *Baker*, 443 U.S. at 146-47. Thus, "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' " of the United States. *Baker*, 443 U.S. at 140.

Plaintiff argues the Defendant carried out policies, procedures and customs that violated his rights under the Due Process Clause as set forth in the Fourteenth Amendment of the Constitution. The acts in which the Defendant engaged allegedly caused Plaintiff pain, suffering, physical injury and emotional distress. Moreover, he avers he was exposed to an unreasonable risk of serious harm and deprived of a "basis human need."

During the relevant time period set forth in the Complaint, Plaintiff was a pre-trial detainee. As such, it is appropriate to evaluate his claims under the Due Process clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Whether Plaintiff received

-4-

constitutionally adequate medical care and/or his conditions of confinement pass constitutional muster is essentially the same as that of a convicted prisoner for purposes of considering Plaintiff's claims. *See Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir.1988) (Holding that the 14th Amendment guarantees at least 8th Amendment protections); *Estate of Miller, ex. Rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir.2012) ("The same standard applies for determining claims of deliberate indifference to the serious medical conditions of pretrial detainees and incarcerated individuals, though pursuant to the Fourteenth Amendment for pretrial detainees rather than the Eight Amendment.")

"To sustain a cause of action under [Section] 1983 for a failure to provide medical treatment, a plaintiff must establish that the defendants acted with 'deliberate indifference to serious medical needs.'" *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir.2001) (quoting *Estelle v. Gamble*, 429 U.S. 97,104 (1976)).  There are two critical components to this inquiry: one objective and one subjective.  *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir.2001).  "To satisfy the objective component, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'"  *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The Sixth Circuit has stated that the objective component of deliberate indifference in a medical-needs case is met where a plaintiff produces evidence of a "serious medical need." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 896 (6th Cir.2004).  The term "serious medical need" was further defined as either "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir.2008)(quoting *Blackmore*, 390 F.3d at 897).  "To satisfy the subjective component, the plaintiff must allege facts which, if

true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id*. at 703.

The Court presumes Plaintiff's serious medical need involved his convalescence after groin surgery.  He does not, however, allege any orders were issued by a physician regarding his care and transport.  Therefore, the Court must look to whether the Defendant should have easily recognized the need for a doctor's attention.  There are no facts alleged in the Complaint, however, that suggest medical care was needed or denied.  While Plaintiff states he advised the driver of his recent groin surgery, he later discloses in the Complaint that he had "just had a heart attack."  He does not state, however, whether he shared this information with the driver nor does he allege the driver should have known he needed medical attention.  If Plaintiff did, in fact, recently suffer a heart attack, he does not allege the Defendant denied him any medical treatment he requested.  Moreover, while Plaintiff requested that the driver prohibit the other inmates from smoking, his limited exposure to second-hand smoke is not the equivalent of a denial of medical treatment.  Beyond his expressions of discomfort and possible nausea, Plaintiff has not alleged how his transport in a cramped and malodorous van placed his medical needs at substantial risk.

As to the subjective component, a plaintiff must show that the defendant had "a sufficiently culpable state of mind." *Id*. (internal quotation marks omitted).  This state of mind is shown "where 'the official knows of and disregards' " the substantial risk of serious harm facing the detainee. *Id*. (quoting *Farmer*, 511 U.S. at 837).  To qualify, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  It is not necessary to establish

direct evidence of a defendant's knowledge, but rather, the knowledge aspect can be inferred from the obviousness of the harm stemming from the risk.  *See Hope v. Pelzer,* 536 U.S. 730, 738 (2002).  Here, the Plaintiff suggests the driver knew the substantial risk of harm he faced by being transported in a crowded van.  What he does not allege, however, is an injury in fact that resulted from the Defendant's actions.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.  Plaintiff's allegations are simply not sufficient to allow his claim to proceed as a constitutional violation for deliberate indifference to a severe medical condition.

Finally, Plaintiff alleges official capacity liability exists because the Defendant had a policy or custom that allegedly caused a violation of his constitutional right.  Plaintiff does not, however, articulate what policy he believes the van driver carried out on behalf of the Defendant. "Whether a constitutional violation occurred is axiomatic to analyzing whether the policy at issue resulted in the constitutional violation." *Thurmond v. County of Wayne*, 447 Fed. Appx. 643, 651 (6th Cir.2011).  Therefore, because no violation of Plaintiff's rights occurred, the Court cannot review whether the Defendant's policy was the catalyst that caused harm to the Plaintiff.

## Conclusion

Based on the foregoing, Plaintiff's Motion to Proceed *In Forma Pauperis* is granted and the Complaint is dismissed pursuant to 28 U.S.C. §1915(e), but without prejudice to any state law claims he may seek to assert.  Further, the Court certifies that an appeal from this decision

could not be taken in good faith.[4]

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT JUDGE

DATED:   June 20, 2013

---

[4]  The statute provides in relevant part: "An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."28 U.S.C. § 1915(a)(3).